**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111 F: (480) 464-5692
Email: centraldocket@jacksonwhitelaw.com
Attorneys for Plaintiffs
By:   Eric K. Macdonald, No. 04531
      Ryan K. Hodges, No. 026639

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Helen Pfeffer, a single person; and Audine Sirrine, a single person,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Health Care Cost Containment System Administration, an Agency of the State of Arizona; Thomas K. Betlach, in his capacity as Director of AHCCCS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(Declaratory Judgment; Injunction)** |

Plaintiffs Helen Pfeffer and Audine Sirrine for their Complaint, allege as follows:

1.    Helen Pfeffer ("Ms. Pfeffer") and Audine Sirrine ("Ms. Sirrine"), at all relevant times, resided in Maricopa County, Arizona.

2.    The Arizona Health Care Cost Containment System Administration ("AHCCCS") is an Arizona State agency that has, at all relevant times, operated in Maricopa County, Arizona. Arizona Long Term Care System ("ALTCS") is the division of AHCCCS, dealing with long-term care benefits for qualified individuals in Arizona.

3.   Thomas Betlach, at all relevant times, was the Director of AHCCCS.

4.   This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question of actual controversy between the parties.

5.   Jurisdiction of this action is based on 28 U.S.C. § 1331, 42 U.S.C. § 1396a, and 42 U.S.C. § 1396p.

6.   This action also arises under the Constitution of the United States and under federal laws including the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

**7.**   Venue is proper in this Court, as the parties are residents of Maricopa County, Arizona, and the events underlying this lawsuit occurred in Maricopa County.

8.   Federal law, 42 U.S.C. §1396a(a), enumerates the required contents of a State Medicaid plan in order for a State to participate in the federal-state cooperative Medicaid program and to receive financial participation from the United States federal government.

9.   Arizona has chosen to participate in the Medicaid program and has developed a State plan that was accepted by the federal government. A.R.S. § 36-2901 *et seq*., A.A.C R9-22 & 28.

10.   Arizona's State plan must "comply with the provisions of section 1396p of this title …." 42 U.S.C. §1396a(a)(18).

**Factual Background for Helen Pfeffer**

11.   Between February 8, 2010, and February 17, 2010, Ms. Pfeffer gifted $91,2000 to her daughter, Virginia Berger.

12. On or about February 10, 2010, Ms. Pfeffer executed a power of attorney with gifting authority, designating Virginia Burger as her agent-in-fact.

13. The power of attorney was executed in the presence of a Notary Public and a witness, Sondra Yarbrough, who attested that to the best of her knowledge, Ms. Pfeffer understood the nature, intent, and effect of the power of attorney that she executed.

14. On February 24, 2010, Ms. Pfeffer submitted an application for long term care benefits through ALTCS.

15. Ms. Pfeffer disclosed these transfers to her daughter to AHCCCS.

16. On or about July 9, 2010, ALTCS requested evidence that Ms. Pfeffer had capacity to execute the power of attorney pursuant to A.R.S. §14-5506(D), and asked that the requested information be provided by July 22, 2010.

17. Near the end of July 2010, AHCCCS notified Ms. Pfeffer's counsel that her application was to be denied because she had more than $2,000.00 in countable resources. In an attempt to offer clarification of the basis of the denial, AHCCCS, through an attorney with the Office of Administrative Legal Services, informed Ms. Pfeffer's counsel that, as a matter of law, Ms. Pfeffer did not have capacity to execute the power of attorney documents; and therefore, the transfers by Ms. Pfeffer's attorney-in-fact were invalid, despite the fact that Ms. Pfeffer had signed the transfer checks, not her attorney-in-fact.

18. Neither federal nor state statute authorizes AHCCCS to deem a power-of-attorney invalid as a matter of law.

19. In the absence of a statute, there is a presumption in Arizona that power-of-attorney documents are valid, which can only be rebutted by a showing that the principal lacked mental capacity at the moment of execution. *See* A.R.S. § 14-5506.

20. AHCCCS violated state law and Ms. Pfeffer's rights by deeming Ms. Pfeffer's power-of-attorney documents invalid as matter of law and without a civil proceeding.

21. On August 2, 2010, AHCCCS denied Ms. Pfeffer's application for ALTCS benefits for excess household resources.

22. Ms. Pfeffer appealed the decision and requested a hearing in this matter, which resulted in a hearing before the Office of Administrative Hearings.

23. At the hearing, AHCCCS's representative testified that the power-of-attorney document was not a reason for the denial. AHCCCS's representative acknowledged that the $91,200.00 was not transferred through a power-of-attorney document, but was transferred by Complainant to her daughter.

24. AHCCCS's representative testified that the basis for the denial was that ALTCS determined through a consensus of a committee that this was a "gift-back" situation, and that an oral revocable trust existed between Ms. Pfeffer and her daughter.

25. AHCCCS determined that the $91,200.00 transfers did not constitute a gift or a transfer for uncompensated value, but that the transfers resulted in an oral revocable trust being created for the benefit of Ms. Pfeffer. AHCCCS also argued that the funds were held in a constructive trust for Ms. Pfeffer.

26. Ms. Pfeffer asserted that the transfers of monies were gifted to her daughter with no strings attached and that the daughter could use the monies in any manner she chose. There was no intent to create a trust, and the elements of a trust were not met.

27. The Administrative Law Judge ("ALJ") determined that there were no facts presented at the hearing that established, either expressly communicated or by virtue of circumstantial evidence or inference drawn from a certain event, that Ms. Pfeffer intended to create a trust when she transferred the $91,200.00 to her daughter. Additionally, there was no reliable evidence to find or infer that a fiduciary relationship existed between the daughter and Ms. Pfeffer, creating a duty for the daughter to use any portion of the $91,200.00 for the benefit of Ms. Pfeffer. *See* AHCCCS Director's Decision and ALJ Decision re: Helen Pfeffer, attached as Exhibit A.

28. The ALJ recommended the reversal of AHCCCS's determination to deny Ms. Pfeffer's application based on the existence of an oral revocable trust or trust-like device. Exhibit A.

29. AHCCCS reviewed the ALJ's recommendation and dismissed it and its reasoning as meritless. On March 24, 2011, AHCCCS again denied Ms. Pfeffer's application for ALTCS benefits because her resources exceed the legal limit. Exhibit A.

**Factual Background for Audine Sirrine**

30. On March 1, 2009, Ms. Sirrine transferred her house to an Income Only Resource Trust. In the same month, she gifted $148,898.76 to her daughter, Darlene Nielson.

31. On March 31, 2009, Ms. Sirrine submitted an application for long term care benefits through ALTCS.

Complaint　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 5 of 10

32. Ms. Sirrine disclosed these transfers to her daughter to AHCCCS.

33. AHCCCS approved Ms. Sirrine for ALTCS acute care benefits effective on March 1, 2009. But because Ms. Sirrine transferred assets without receiving value in return, she was assessed a penalty period such that she would not receive long term care benefits until June 24, 2013.

34. Ms. Sirrine acknowledges that she made an uncompensated transfer and that she is subject to the penalty period.

35. Between May 2009 and June 2010, Ms. Nielsen returned to Ms. Sirrine about $52,424, most of which was used to pay for Ms. Sirrine's expenses at the care facility.

36. Ms. Sirrine, through her representative, informed AHCCCS that Ms. Nielsen had made payments for Ms. Sirrine's nursing home care. Ms. Sirrine's representative anticipated that Ms. Sirrine's penalty period would be reduced based on the payments Ms. Nielsen made, per AHCCCS policies.

37. On August 2010, AHCCCS discontinued Ms. Sirrine's application for ALTCS benefits for excess household resources.

38. Ms. Sirrine appealed the decision and requested a hearing in this matter, which resulted in a hearing before the Office of Administrative Hearings.

39. At the hearing, AHCCCS's representative testified that the basis for the denial was that ALTCS determined through a consensus of a committee that this was a "gift-back" situation, and that an oral revocable trust existed between Ms. Sirrine and her daughter.

40. Despite its previous determination, AHCCCS now determined that the $148,898.76 transfers did not constitute a gift or a transfer for uncompensated value, but that

the transfers resulted in an oral revocable trust being created for the benefit of Ms. Sirrine. AHCCCS also made arguments that the funds were held in a constructive trust for Ms. Sirrine.

41. AHCCCS calculated that the $96,574.23 left from the original transfer were held in trust for Ms. Sirrine and were therefore countable resources, which exceeded the legal limit.

42. AHCCCS made no change in its previous determination regarding the house transferred to the Income Only Resource Trust.

43. Ms. Sirrine asserted that the transfers of monies were gifted to her daughter with no strings attached and that the daughter could use the monies in any manner she chose. There was no intent to create a trust, and the elements of a trust were not met.

44. The Administrative Law Judge ("ALJ") determined that there were no facts presented at the hearing that established that Ms. Sirrine intended to create a trust when she transferred the $148,898.76 to her daughter. Additionally, there was no reliable evidence to find or infer that a fiduciary relationship existed between the daughter and Ms. Sirrine, creating a duty for the daughter to use any portion of the $148,898.76 for the benefit of Ms. Sirrine. *See* AHCCCS Director's Decision and ALJ Decision re: Audine Sirrine, attached as Exhibit B.

45. The ALJ recommended the reversal of AHCCCS's determination to discontinue Ms. Sirrine's benefits based on the existence of an oral revocable trust or trust-like device. Exhibit B.

46. AHCCCS reviewed the ALJ's recommendation and dismissed it and its reasoning as meritless. On March 24, 2011, AHCCCS affirmed its discontinuance of Ms. Sirrine's benefits because her resources exceed the legal limit. Exhibit B.

**Common Factual Background**

47. It is undisputed the Ms. Pfeffer and Ms. Sirrine were otherwise eligible for long-term care benefits.

48. In order to be eligible for ALTCS benefits, an applicant must be aged, blind or disabled, 42 U.S.C. §1396(1), A.A.C. R9-28-402(A); must live in an appropriate setting, A.A.C. R9-28-406; must meet the health criterion for Medicaid eligibility, 42 U.S.C. §1396a(a)(10)(A)(ii)(VI), A.A.C. R9-28-301 *et seq.*; and must meet the financial criteria (income and resource) for eligibility, A.A.C. R9-28-407 & 408.

49. Ms. Pfeffer and Ms. Sirrine are elderly individuals over the age of sixty-five at the time they filed their applications.

50. Ms. Pfeffer and Ms. Sirrine resided in assisted living residences at the time of applications and continues to reside in an assisted living residences, which are ALTCS-approved facilities.

51. AHCCCS issues a Pre-Admission Screening or PAS to Medicaid applicants. A.A.C. R9-28-301 *et seq.*

52. Ms. Pfeffer and Ms. Sirrine received a PAS for Medicaid eligibility.

53. Aside for the transferred funds in dispute, Ms. Pfeffer and Ms. Sirrine, at all relevant times, have had less than $2,000 in countable resources, which is the resource criterion for Medicaid eligibility for ALTCS benefits. A.A.C. R9-28-407(F).

54. Ms. Pfeffer and Ms. Sirrine, at all relevant times herein, have had countable income below the income cap for the ALTCS program. A.A.C. R9-28-408(E).

55. AHCCCS and ALTCS have seen and approved similar cases in the past. There is no material difference between Ms. Pfeffer's and Ms. Sirrine's cases and other cases approved by AHCCCS.

56. In violation of federal and state laws, AHCCCS has wrongfully determined that Ms. Pfeffer and Ms. Sirrine have countable resources in excess of the legal limit for AHCCCS long-term care services by determining that the funds were held in a revocable, oral trust or a constructive trust.

57. An actual controversy has arisen and now exists between Ms. Pfeffer and Ms. Sirrine on one side and AHCCCS on the other as to their respective rights and status regarding Ms. Pfeffer's and Ms. Sirrine's eligibility for ALTCS services.

58. AHCCCS has violated 42 U.S.C. § 1396a and 42 U.S.C. § 1396p by determining that the gifts to their respective daughters are countable resources.

59. Pursuant to the provisions of 42 U.S.C. § 1988, Ms. Pfeffer and Ms. Sirrine are entitled to recover attorneys' fees for causes of action alleged under the Constitution and laws of the United States.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment in their favor and against AHCCCS and its Director as follows:

A. For a Declaratory Judgment declaring that the funds transferred by Ms. Pfeffer and Ms. Sirrine are uncompensated transfers and not held in trust and that

AHCCCS must provide ALTCS benefits in accordance with federal and state law regarding the transfer of assets;

B. For a Declaratory Judgment declaring that AHCCCS violated Ms. Pfeffer's and Ms. Sirrine's civil rights by counting the gifts to their respective daughters as resources, which resulted in a denial and discontinuance of AHCCCS benefits;

C. For a Declaratory Judgment declaring that AHCCCS does not have authority to deem an applicant's power-of-attorney documents invalid;

D. For an Order to AHCCCS to immediately approve Ms. Pfeffer and Ms. Sirrine for acute and long-term care benefits until the matter is resolved;

E. For reimbursement to the family members or other individuals or companies who have paid for Plaintiffs' expenses that should have been paid by AHCCCS;

F. For reasonable attorneys' fees and court costs pursuant to 42 U.S.C. § 1988; and

G. For such other further relief as this Court deems just and proper under the circumstances, including an Order that AHCCCS revamp its policy to be consistent with the Court's findings.

DATED May 3, 2011.

JACKSON WHITE

   s/ Ryan K. Hodges
Eric K. Macdonald, No. 04531
Ryan K. Hodges, No. 026639
Attorneys for Plaintiffs