Paul E. Steen (State Bar No. 011111)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave., Suite 1600
Phoenix, Arizona  85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
*Attorneys for defendants AHCCCS*
*& Thomas Betlach*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **HELEN PFEFFER, a single person; and AUDINE SIRRINE, a single person,**<br><br>       **Plaintiffs,**<br>**v.**<br><br>**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an Agency of the State of Arizona; THOMAS K. BETLACH, in his capacity as Director of AHCCCS,**<br><br>       **Defendants.** | **No. 2:11-cv-00891-GMS**<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

        Defendants, Arizona Health Care Cost Containment System Administration ("AHCCCS") and Thomas K. Betlach, in his capacity as Director of AHCCCS, by and through counsel undersigned, hereby respond to Plaintiffs Helen Pfeffer and Audine Sirrine's motion for preliminary injunction to compel AHCCCS to waive any Medicaid eligibility requirements for immediate acute and long-term care benefits.  Defendants rely on the accompanying memorandum of points and authorities.

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background

Plaintiff Helen Pfeffer ("Ms. Pfeffer") is currently 88 years old and resides at Emeritus, an assisted living facility. Ms. Pfeffer's monthly income consists of $203.06 in a state pension and $1,017.00 in social security income, for a total monthly income of $1,220.06. Ms. Pfeffer's total monthly income of $1,220.06 is approximately $2,500.00 less than the monthly cost of her care at Emeritus, but Ms. Pfeffer had cash savings to pay this difference. However, from February 8, 2010, through February 17, 2010, through a series of transfers, Ms. Pfeffer transferred $91,200.00, almost all of her cash savings, to her daughter, Virginia Berger. As of February 24, 2010, Ms. Pfeffer had transferred all but $217.46 of her available cash resources to her daughter. As a result, Ms. Pfeffer's resources were below the $2,000.00 maximum resources allowed for purposes of ALTCS eligibility, and Ms. Pfeffer therefore applied for the ALTCS program.[1]

Because Ms. Pfeffer's total monthly income of $1,220.06 is approximately $2,500.00 less than the monthly cost of her care at Emeritus, after transferring all of her cash t6o her daughter, Ms. Pfeffer has no means to pay the difference. Ms. Pfeffer's authorized representative is the law firm of Jackson White. After Jackson White filed the

---

[1] Ms. Pfeffer also has $1,500.00 in a CD, which is designated as a burial fund and is therefore excluded as a countable resource.

ALTCS application on behalf of Ms. Pfeffer, the AHCCCS specifically asked Ms. Pfeffer's representative at Jackson White how Ms. Pfeffer was planning to pay for her living expenses.  Jackson White's representative responded that "due to a change in circumstances, the client does no know yet how the expenses will be met."  Furthermore, AHCCCS subsequently learned from Emeritus that a third party was pay the approximately $2,500.00 difference between Ms. Pfeffer's monthly income and the cost of her care at Emeritus, because Ms. Pfeffer had no means to pay that difference after transferring all of her money to her daughter.  In addition, on May 17, 2010, Ms. Pfeffer's representative at Jackson White alerted AHCCCS of Ms. Pfeffer's intent to revisit any imposed penalty period prior to its expiration.  Since AHCCCS had not yet issued an eligibility determination on Ms. Pfeffer's ALTCS application, Ms. Pfeffer was clearly anticipating that the transfer of Ms. Pfeffer's money would result in the imposition of a penalty period and that Ms. Pfeffer's daughter would be paying for Ms. Pfeffer's care with the money so transferred.  Doing so was the only way to reduce the penalty period, while allowing Ms. Pfeffer's daughter to keep some of the money she received from her mother, while at the same time transferring the cost of Ms. Pfeffer's care at Emeritus to the taxpayer.  However, when AHCCCS learned all of the relevant facts in this regard and viewed them in total, AHCCCS determined that the transfer of Ms. Pfeffer's money to her daughter effectuated

an oral revocable trust or trust-like arrangement[2] whereby Ms. Pfeffer's assets were transferred to her daughter with the intent that the funds should be used by Ms. Pfeffer' daughter to pay for the cost of Ms. Pfeffer's care until such time the Ms. Pfeffer became entitled to have the cost of her long term care services paid for by the ALTCS program, at which point any remaining funds would belong to Ms. Pfeffer's daughter.  The corpus of a revocable trust is a resource that is available to an ALTCS applicant and is counted toward the $2,000.00 resource limit for purposes of ALTCS eligibility.  This being the case, AHCCCS determined that Ms. Pfeffer's ALTCS application should be denied since the transferred money, being the corpus of the revocable trust or trust-like arrangement, was considered to be a resource available to Ms. Pfeffer.  By AHCCCS Health Insurance Notice dated July 30, 2010, AHCCCS denied Ms. Pfeffer's application for ALTCS benefits because "[y]our countable resources are more that the limit of $2,000.00."  The AHCCCS Health Insurance Notice expressly listed Ms. Pfeffer's total countable resources as $91,200.00 (the amount Ms. Pfeffer transferred to her daughter).

Plaintiff Audine Sirrine ("Ms. Sirrine") challenges the determination by defendant AHCCCS to discontinue Ms. Sirrine's ALTCS benefits, effective October 1, 2010, due to Ms. Sirrine's failure to meet resource eligibility criteria for the ALTCS program, as set forth in the AHCCCS Health Insurance Notice dated August 26, 2010.

---

[2] The relevance of a trust-like arrangement will be discussed in detail later in this Director's Decision.  42 U.S.C. §1396p(d) sets forth how uncompensated transfers of assets that constitute trusts are to be treated, and  42 U.S.C. §1396p(d)(6) expansively defines "trust" to include any "legal instrument or device that is similar to a trust."  The phrase "trust-like arrangement" used herein refers to this "device that is similar to a trust" as set forth in 42 U.S.C. §1396p(d)(6).

Ms. Sirrine is currently 93 years old and has resided in a nursing care facility ("Lifecare") since June 10, 2008.  During the month of March 2009, Ms. Sirrine transferred all of her money, $148,898.76, to her daughter, Darlene Nielsen.  According to Ms. Sirrine, her "agent-in-fact, acting under a valid financial power-of-attorney and on Ms. Sirrine's behalf, signed the checks to transfer the funds."[3]  Since these checks were signed by Darlene Nielsen, Ms. Sirrine's daughter, it was Ms. Sirrine's daughter who transferred Ms. Sirrine's money to herself.  On March 31, 2009, after Ms. Sirrine's resources were reduced to less than $2,000.00 (the maximum resources allowed for purposes of ALTCS eligibility), Ms. Sirrine applied for the ALTCS program.  Ms. Sirrine's application was approved.  However, because Ms. Sirrine had transferred assets without receiving any value in return, she was assessed a penalty period that rendered her ineligible to receive ALTCS benefits until June 24, 2013.  Ms. Sirrine was therefore approved to receive acute care AHCCCS medical services only.  However, AHCCCS subsequently learned that Darlene Nielsen had used $52,424.00 of the $148,898.76 that Ms. Sirrine had transferred, to pay for Ms. Sirrine's care.  Ms. Nielsen used this $52,424.00 to pay Ms. Sirrine's Lifecare bill each month (which was between $5,000.00 and $6,000.00 per month), beginning immediately after Ms. Sirrine transferred all of her money to Ms. Nielsen.  When AHCCCS learned all of the relevant facts in this regard, it determined that the transfer of Ms. Sirrine's money to her daughter effectuated an oral revocable trust or trust-like arrangement whereby Ms. Sirrine's assets were transferred to

her daughter with the intent that the funds she be used by Ms. Sirrine's daughter to pay for the cost of Ms. Sirrine's care until such time that Ms. Sirrine became entitled to have the cost of her long term care services paid for by the ALTCS program, at which point any remaining funds would belong to Ms. Sirrine's daughter.  The corpus of a revocable trust is a resource that is available to an ALTCS applicant and is counted toward the $2,000.00 resource limit for purposes of ALTCS eligibility.  This being the case, AHCCCS determined that Ms. Sirrine's ALTCS benefits should be discontinued since the transferred money, being the corpus of the revocable trust or trust-like arrangement, was appropriately considered to be a resource available to Ms. Sirrine.  AHCCCS determined that Ms. Sirrine's countable resources were therefore $96,574.34 (the $148,898.76 transferred minus the $52,424.00 used to pay for Ms. Sirrine's care), and that Ms. Sirrine therefore failed to meet the $2,000.00 resources eligibility standard for the ALTCS program.  Accordingly, by AHCCCS Health Insurance Notice dated August 26, 2010, AHCCCS informed Ms. Sirrine that her AHCCCS medical services under the ALTCS program would stop, effective October 1, 2010, because "[y]our countable resources are more than the limit of $2,000.00."  This litigation likewise challenges AHCCCS' determination.

## II.    **AHCCCS is the Sole Determiner of ALTCS Eligibility Disagreements**

As per the Notices, AHCCCS denied Plaintiffs' long-term care benefits—they failed to meet the required eligibility criterion because they are over the resource limit.

---

[3] Ms. Sirrine's Response to AHCCCS' Post-Hearing Memorandum, page 4 at lines 18 and 19.

Specifically, AHCCCS does not recognize Plaintiffs' transfers and re-transfer of their funds. Therefore, they are "over resources". Specifically, Plaintiffs are "over resources" because the alleged transfers of all of Plaintiffs' resources were not transfers at all, but are held in trust to be used to pay for Plaintiffs' care until they are determined eligible for long-term care benefits. Trusts, under Medicaid law, are reviewed pursuant to 42 U.S.C. §1396(p) and A.R.S. §36-2934.01. A.R.S. §36-2934.01(A) specifically states that the AHCCCS has sole authority to qualify (and hence disqualify) any trust. In this case, AHCCCS determined that the existence of a trust makes Plaintiffs over-resources and therefore ineligible for benefits. AHCCCS' decision is ripe for appeal, but not in this Court. Because AHCCCS' decision concerns Plaintiffs' eligibility for acute and long-term care benefits, public assistance programs, Plaintiffs must utilize the proper administrative forum for review, all pursuant to the Arizona Administrative Procedures Act, codified at A.R.S. §41-1092 et seq.

Here, Plaintiffs may appeal AHCCCS' denial of benefits via an OAH Hearing—the only legal forum for resolution of AHCCCS' eligibility determination. This Court, pursuant to A.R.C.P. 12(b)(1), simply does not have jurisdiction to determine whether Plaintiffs, applicants for acute and long-term care benefits, are in fact eligible or not. Therefore, Plaintiffs fail to state a claim pursuant to A.R.C.P. 12(b)(6).

## III.  Plaintiffs Seek Relief That Exceeds the Court's Injunctive Powers

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Plaintiffs seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities favors the moving parties; and (4) that an injunction is in the public

interest.  *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S.Ct. 365,374 (2008); *McDermott v. Ampersand Publ'g, L.L.C.,* 593 F.3d 950, 957 (9th Cir. 2010).

Moreover, other considerations dictate whether injunctive relief is appropriate. For example federal law discourages the grant of an injunction against any aspect of a state court proceeding.  27 U.S.C. § 2283.  Here, an OAH Hearing is available to Plaintiffs.  Given that AHCCCS denied acute and long-term care benefits, Plaintiffs seek an order to override, and thereby enjoin, AHCCCS' denial.  This Court has no jurisdiction to do so given the restrictions imposed by 28 U.S.C. § 2283.  *See, e.g., Negrete v. Allianz Life Ins. Co. of North America,* 523 F.3d 1091, 1098, 1100-01 (9th Cir. 2008) (holding that "[o]n its face the present [Anti-Injunction] Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions," and that "the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." (citing *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970) ).

Also, an injunction should not be granted to prevent the exercise of a public or private office in a lawful manner.  *Cf.* A.R.S. §12-1802(6).  Where a public official is entrusted with discretionary power, the exercise of that discretion should not be controlled by injunction absent a showing that the official has abused that discretionary power.  *Wales v. Tax Comm'n,* 100 Ariz. 181, 186, 412 P.2d. 472, 476 (1966).  Here, the Plaintiffs are challenging the decisions of state officials vested with discretionary authority to determine eligibility for services authorized for Medicaid.  Given that AHCCCS is the "sole determiner" of acute and long-term care eligibility disagreements and that AHCCCS determined that Plaintiffs were ineligible, Plaintiffs have not established even *prima facie* evidence of an abuse of discretion.  An injunction

precluding the administrative hearing process from progressing as it normally would is not justified.[4]

**IV.   Plaintiffs' Requested Relief Seeks to Upset the *Status Quo***

Plaintiffs request extraordinary injunctive relief.  They are asking this Court to enter a mandatory injunction requiring AHCCCS to pay for acute and long-term care benefits, notwithstanding their "over resources" status.  Preliminary injunctive relief is not available to upset the *status quo* in this way.

The Court's equitable jurisdiction to grant a preliminary injunction should only be exercised to preserve the *status quo* pending judicial action on the merits of a claim.  *See Firchau v. Barringer Crater Co.,* 86 Ariz. 215, 219, 344 P.2d 486, 488-89 (1959)("A temporary restraining order . . . is intended as a restraint on the defendant until the propriety of granting a preliminary injunction can be determined, thus going no further in its operation that to preserve the status quo until the determination."); *see also Sheehan v. Purolator Courier,* 676 F.2d 877 (2d Cir. 1982).  Thus, injunctive relief "is not a remedy favored by the courts" where it "goes beyond simply maintaining the status quo pending a trial on the merits."  *Shoen v. Shoen,* 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1990)(citing *Burton v. Celentano,* 134 Ariz. 594, 595, 658 P.2d 247, 248 (App. 1982) ); *see Barahona-Gomez v. Reno,* 167 F.3d 1228, 1234 (9th Cir. 1999) ("A preliminary injunction is . . . a device for preserving the status quo and preventing the irreparable loss of rights before judgment."); *Klaus v. Hi-Shear Corp.,* 528 F.2d  225 (9th Cir. 1975); *U.S. v. School Dist. of Omaha, State of Neb.,* 367 F.Supp. 179, 194 (D.Neb. 1973) (purpose of injunction is to prevent threatened wrong or any further perpetration of injury and to

---

[4] No restraining order or preliminary injunction may be issued except upon the giving of security of the applicant in such sum as the court deems proper for the payment of the costs and damages as maybe incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.  Fed. R. Civ. P. 65(e).  If the Court is inclined to grant an injunction it must impose a bond requirement sufficient to cover the substantial additional expense of care services the State will incur during the pendency of the injunction in providing the additional services Plaintiff seeks.

maintain things in the condition which they are in at the time.)  Injunctions "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods v. Bd. of Teamsters & Auto Truck Drivers,* 415 U.S.423, 439 (1974).

Plaintiffs' request, if granted, will not preserve the *status quo*.  The *status quo* here is that AHCCCS denied acute and long-term care benefits.  AHCCCS has already determined that it need not provide these benefits to Plaintiffs.  Ordering AHCCCS, or any other part of state government, to provide services now would upset the *status quo* and therefore violate the fundamental purposes behind the issuance of a temporary restraining order and preliminary injunctive relief.

## V.    Plaintiffs' Motion Does Not Establish a Probability of Success on the Merits.

The Court should also deny Plaintiffs' motion for preliminary injunction because Plaintiffs have not shown a probability of success on the merits.

### A.    Plaintiffs 'Assertion that AHCCCS has violated the Medicaid Act is Without Merit.

Plaintiffs are asserting a violation of the Medicaid Act.  72 U.S.C. § 1936 et seq.  However, Plaintiffs are not entitled to the services demanded because they are "over resources", a decision which AHCCCS as "sole determiner" of eligibility disagreements legally made, and routinely makes on a case by case basis.  Plaintiffs fail to establish that AHCCCS lacked the discretion to deny Plaintiffs acute and long-term care benefits and to determine that Plaintiffs are "over resources".  Hence, Plaintiffs do not demonstrate a probability of success on the merits.

### B.    Maintaining the Status Quo Involves No Irreparable Harm and the Balance of Hardships Favors Denial of the Requested Relief.

Injunctive relief is allowed only where needed to prevent "irreparable harm."  *See e.g., Lydo Enter., Inc. v. City of Las Vegas,* 745 F.2d 1197, 1202 (9th Cir. 1959) (function

and purpose of a "preliminary injunction" is to prevent irreparable injury pending an ultimate determination).  Harm that can be remedied later by monetary payments is not irreparable.  *See Lydo Enter., Inc.,* 745 F.2d at 1213 (if money damages or other relief granted in the course of litigation can adequately compensate Plaintiff, irreparable injury probably will not follow denial of preliminary injunction); *Los Angeles Memorial Coliseum Comm'n.,* 634 F.2d at 1202 (purely monetary injuries are not normally considered irreparable).

Nor does the harm to the Plaintiffs outweigh the harm to AHCCCS and the State. If the preliminary injunction is denied, Plaintiffs may suffer the inconvenience of spending their Trust monies, but their care will not be compromised.  If granted, AHCCCS and the State will, in a time of a severe budget crisis, be forced to spend thousands of dollars annually on services that may not be reimbursable by Medicaid.

## VI.   Plaintiffs' Medicaid Act Claim

Based on the *Colorado River* doctrine, it is proper for the Court to dismiss or stay this matter pending a consideration on the merits through the administrative process. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976).  Courts consider multiple factors in deciding whether to stay a case on *Colorado River* grounds. These factors include, "(1) whether the state court was the first to assume jurisdiction over a property; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction . . . (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court proceeding can adequately address the rights of the federal Plaintiff . . . (7) whether the exercise of jurisdiction would encourage forum-shopping." *AmericourceBergen Corp. v. Roden,* 495 F.3d 1143, 1155 (9th Cir. 2007).

Here, these factors weigh in favor of dismissing or staying the action.  An OAH Hearing is available in which Plaintiffs may seek the same relief as they are seeking here—acute and long-term care benefits.  Applying the factors, the first two factors do not weigh heavily in favor of either administrative or federal forums.  As the OAH Hearing is wholly available to address the same issues brought here, denying Plaintiffs' motion avoids piecemeal litigation, the risk of inconsistent results, and the potential for forum-shopping through seeking relief in federal court rather than through the OAH Hearing.  With respect to the remaining factors, the decision to dismiss or stay depends largely on whether the key issues before the Court are appropriately resolved through the OAH Hearing.  An examination of the critical issues reveals that a federal court ruling on the merits is inappropriate at this time.

**VII.**   **Conclusion**

For the reason set forth, Plaintiffs' Motion for Preliminary Injunction should be denied in all respects.

**DATED** this **1st** day of July, 2011.

**RYAN RAPP & UNDERWOOD, PLC**


 **/s/ Paul E. Steen**
Paul E. Steen
*Attorneys for defendants AHCCCS &*
*Thomas Betlach*


**ORIGINAL** of the foregoing filed
This **1st** day of July, 2011 with:

Clerk of Court
United States District Court
For the District of Arizona

With a **COPY** of the foregoing
mailed this same date to:

Eric K. Macdonald
Ryan K. Hodges
JACKSON WHITE ATTORNEYS AT LAW
40 North Central Avenue, Suite 200
Mesa, Arizona 85201
*Attorneys for Plaintiff*


 /s/ Michele L. Glendenning