**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Pfeffer, | No. CV-11-0891-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Health Care Cost Containment System Administration, an Agency of the State of Arizona; Thomas K. Betlach, in his capacity as Director of AHCCCS, | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 9), and Defendants' request in their Response that the Court dismiss or stay this case (Doc 13). For the reasons provided below, the Court denies both Plaintiff's motion and Defendants' request for a dismissal or stay.

**BACKGROUND**

In August 2009, Plaintiff Helen Pfeffer enrolled at Emeritus, an assisted living facility. Although her monthly social security and pension income of $1,220 was insufficient to cover the $3,700 per month cost of her care, she used cash savings to cover the difference. In early 2010, Plaintiff engaged the law firm Jackson White and its employees to be her authorized representatives and apply for benefits under the Arizona Long Term Care System ("ALTCS"), a program administered by the Arizona Health Care Cost Containment System

1  Administration ("AHCCCS"). ALTCS is the state program that administers the Federal
2  Medicaid program within the State of Arizona.

3  Shortly after engaging Jackson White, Plaintiff wrote checks totaling $91,200 to her
4  daughter, Virginia Burger, depleting all but $217 of her personal assets. Plaintiff does not
5  contest that she wrote the checks to become ALTCS eligible. One week later, on February
6  24, 2010, she filed her ALTCS application. By depleting her assets, Plaintiff became
7  insolvent and thus unable to pay Emeritus for her care. Either she or her authorized
8  representatives understood that, at a minimum, the attempted transfer of funds to her
9  daughter would result in a period of ineligibility during which Plaintiff would not receive
10 ALTCS benefits. It is uncontested that, depending upon how AHCCCS characterized the
11 transfer, the period of ineligibility would have lasted a minimum of ten months, and possibly
12 much longer.

13 Ms. Burger testified that at the time the $91,200 were transferred to her, she planned
14 to use the funds to cover the costs of Plaintiff's care until Plaintiff qualified for ALTCS
15 benefits. The evidence confirms that Ms. Burger has done just that. She has been paying
16 about $3,000 per month of the transferred funds towards Plaintiff's care—$2,500 per month
17 to Emeritus and $500 per month for hearing aids and other sundry needs. Although Ms.
18 Burger testified that she believes she could use the funds for purposes other than her mother's
19 care, she has not done so. To date, approximately $38,000 remains of the amount her mother
20 transferred to her.

21 On August 2, 2010, AHCCCS denied Plaintiff's application for ALTCS benefits,
22 determining that her countable resources exceeded the $2,000 limit allowed by law.
23 AHCCCS explained that it did not consider the $91,200 which Plaintiff gave her daughter
24 to be a gift. Rather AHCCCS designated the money as funds available to Plaintiff, and
25 therefore included the $91,200 in its computation of Plaintiff's resources. Plaintiff
26 subsequently requested an administrative hearing to review the AHCCCS's decision. In this
27 hearing, the Administrative Law Judge (ALJ) recommended the reversal of AHCCCS's
28 denial of benefits. The ALJ's recommendation, however, was subsequently reviewed by the

1  director of AHCCCS, who dismissed the recommendation as meritless.

2  Plaintiff filed her Complaint in the instant action on May 3, 2011, seeking, among
3  other things, a declaratory judgment that AHCCCS must provide her with ALTCS benefits.
4  (Doc. 1). Plaintiff now moves for a preliminary injunction to compel AHCCCS to give her
5  immediate care benefits until this case is resolved (Doc. 9). In their Response to Plaintiff's
6  injunction motion, Defendants not only ask that her motion be denied, but request that the
7  case be dismissed or stayed "pending a consideration on the merits through the administrative
8  process." (Doc. 13 at 11).

## DISCUSSION

### I.    Plaintiff's Motion for Preliminary Injunction

#### A.    Legal Standard

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also Preminger v. Principi*, 422 F.3d 815, 823 n.5 (9th Cir. 2005) ("At the preliminary injunction stage, Plaintiffs have the burden of proof."). All four factors must be satisfied for the Court to grant a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In addition, because the function of a preliminary injunction is to preserve the status quo pending determination of the merits, there is heightened scrutiny where a movant seeks to alter, rather than maintain, the status quo. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are subject to heightened scrutiny).

#### B.    Analysis

As stated**,** to obtain a preliminary injunction, Plaintiff must show that she is likely to prevail on the merits. *Winter*, 555 U.S. at 20. Plaintiff contends that her transfer to Ms. Burger was an unconditional gift. (Doc. 9 at 2). Because the $91,200 was a gift, she argues,

- 3 -

1  AHCCCS is required to apply the federal regulations dealing with uncompensated transfers.
2  *See* 42 U.S.C. § 1396p(c)(1)(A),(B) (stating that state Medicaid plans "must" assess a period
3  of ineligibility to individuals who "dispose[ ] of assets for less than fair market value" within
4  60 months of their application for benefits). In those regulations, gifts are not counted
5  towards the amount of total resources available to an individual for purposes of Medicaid
6  eligibility. *See id.* Rather, applicants who give gifts within 60 months of applying for
7  Medicaid are assessed an ineligibility period. *Id.* In Plaintiff's case, the ineligibility period
8  would have lasted between 10 and 15 months. *See id.* If those regulations had been applied,
9  Plaintiff would presently be eligible for ALTCS benefits, and Ms. Burger would be allowed
10 to keep the remaining $38,000 of the funds Plaintiff transferred to her.

11 AHCCCS, on the other hand, contends that the transfer of funds from Plaintiff to Ms.
12 Burger did not constitute an unconditional gift, but rather created a revocable trust or a
13 "device that is similar to a trust." 42 U.S.C. § 1396p(d)(3)(A), (6). If so, Plaintiff would not
14 be eligible for ALTCS benefits until the substantial part of the transferred funds had been
15 exhausted. *See id* (stating that both revocable trusts and devices similar to trusts "shall be
16 considered resources available to the individual"). In short, the merits of Plaintiff's case
17 hinge on whether the $91,200 she gave Ms. Burger constituted a gift, or created a trust-like
18 device.

19 According to the Program Operating Manual System (POMS) published by the Social
20 Security Administration (SSA), a trust-like device is a "legal instrument, device, *or*
21 *arrangement*, which may not be called a trust under State law, but which is similar to a trust."
22 POMS SI 01120.201G, *available at*
23 https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120201#g (emphasis added).[1] The SSA
24 treats such a device or arrangement as a trust where 1) "it involves a grantor who transfers
25 property," 2) "the property is transferred to an individual . . . with fiduciary obligations," and

---

[1]This section of the POMS has been in effect since February 3, 2010. *See* POMS SI
01120.201, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120201.

- 4 -

3) "the grantor transfers the assets to be held, managed or administered by the individual . . . for the benefit of the grantor." *Id.*

First, to be a trust-like device, an arrangement must involve "a grantor who transfers property." *Id.* In the instant case, Plaintiff, the grantor, transferred $91,200 to Ms. Burger. This $91,200 constitutes transferred property.

Second, the property must be transferred to an individual "with fiduciary obligations." *Id.* Ms. Burger has testified that at the time the funds were transferred, she intended to use the funds to pay for Plaintiff's care until Plaintiff qualified for Medicaid. Moreover, for the past 18 months, Ms. Burger has been using the transferred funds to make periodic and recurring payments for Plaintiff's care at Emeritus and to pay for Plaintiff's other sundry needs. (Doc. 21 at 10). These recurring payments, taken together with Ms. Burger's stated intent, the insolvency created by the transfer, and the prolonged period to follow the transfer in which Plaintiff would be unable to pay for her care, establish a significant likelihood that Plaintiff invested Ms. Burger not only with $91,200, but also with fiduciary obligations in relation to those funds.[2]

Lastly, the grantor must transfer the assets "to be held, managed or administered by the individual . . . for the benefit of the grantor." POMS SI 01120.201G, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120201#g. As discussed, Ms. Burger has been holding the transferred funds in her account and administering them exclusively for Plaintiff's benefit. Although Ms. Burger testified that she could also use those funds for purposes other than her mother's care, she has not done so during the entire 18 months since the transfer. There is a significant likelihood, therefore, that Plaintiff transferred the funds to Ms. Burger "to be held, managed, [and] administered" for her benefit. *Id.*

In sum, it appears likely that Plaintiff's claimed uncompensated transfer was in

---

[2] Plaintiff asserts that the ALJ who reviewed AHCCCS's decision found no evidence of intent by Plaintiff to create a trust. (Doc. 9 at 13). The Court, however, is not bound by the ALJ's decision. Moreover, the ALJ's determination regarding Plaintiff's intent was "stricken in its entirety" upon subsequent review by the director of AHCCCS. (Doc. 1, Ex. A at 1).

- 5 -

actuality the instigation of a "device, or arrangement . . . that is similar to a trust." *Id. See also* 42 U.S.C. § 1396p(d)(6). Plaintiff, therefore, has not met her burden of establishing that she is likely to succeed on the merits. This alone is fatal to her motion.

## II. Defendants' Request for Dismissal or Stay.

In their response to Plaintiff's injunction motion, Defendants assert that this case should be dismissed or stayed "pending a consideration on the merits through the administrative process." (Doc. 13 at 11). Plaintiff, however, has already exhausted her administrative remedies. Her case underwent an OAH hearing on February 18, 2011, and the Director of AHCCCS subsequently exercised his authority not to certify the ALJ's recommendations. (*See* Doc. 1, Ex. A). Plaintiff has not appealed the Director's decision to the Superior Court pursuant to A.R.S. §§ 12-901–914 (2011), but rather notes in her reply that "[t]here is no pending State proceeding at issue." (Doc. 14 at 7). Defendants' arguments, therefore, pertaining to the *Colorado River* doctrine are irrelevant. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19 (1976) (discussing several factors a federal court may consider when "assessing the appropriateness of dismissal *in the event of concurrent jurisdiction*") (emphasis added).

## CONCLUSION

Plaintiff has not met her burden of demonstrating likely success on the merits. The Court, therefore, will not issue an injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 9) is **DENIED.**

DATED this 30th day of September, 2011.

_____
G. Murray Snow
United States District Judge